

# Haas & Castillo, P.A.
### Attorneys At Law

**Lee L. Haas**
Board Certified Business Litigation
Lee@Haas-Castillo.com

Arbor Shoreline Office Park
19321-C U.S. 19 North, Suite 401
Clearwater, Florida 33764
(727) 535-4544

**Marcus A. Castillo**
Board Certified Labor & Employment Law
Certified Circuit Court Mediator
Marcus@Haas-Castillo.com

September 1, 2017

**VIA US MAIL**

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, GA 30303

Re:    Horneland v. United of Omaha Life Insurance Co., Case No. 16-6935-FF

Dear Mr. Smith,

On behalf of Appellant Kristian Horneland and pursuant to Rule 28(j), I am submitting the following as notice of supplemental authority in the above-referenced appeal. Specifically, I wish to bring to the Court's attention the decision of a panel of this Court in Bradshaw v. Reliance Standard Life Insurance Co. Case Number 16-11125 decided on August 31, 2017. I am submitting a copy of the opinion with this correspondence.

This supplemental authority is relevant to a passage from Appellant's Initial Brief at page 16 in which Fought v. Unum Life Insurance Company of America, 379 F. 3d 997, 1011 (10th Cir. 2004) was cited for the proposition that courts have required stringent proof that a pre-existing condition caused or contributed to a disability. The panel in Bradshaw adopted the reasoning in Fought with approval and held: (1) that a carrier must show that a claimed disability was ***substantially*** caused by, contributed to or resulted from a pre-existing condition to invoke a pre-existing condition exclusion and (2) that a carrier may not excessively stack inferences in making such showing.

We appreciate the Court's consideration of this supplemental authority.

Sincerely,

Marcus A. Castillo, Esquire

MAC: ng
Enclosures
cc:    Kristina B. Pett, Esquire

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 16-11125

D.C. Docket No. 8:15-cv-00988-JSM-TGW

JULISSA BRADSHAW,

Plaintiff - Appellant,

versus

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(August 31, 2017)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and SCHLESINGER,[*]
District Judge.

ROSENBAUM, Circuit Judge:

---

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

Plaintiff-Appellant Julissa Bradshaw had a healthy pregnancy and no other pre-existing medical conditions when she bought a disability-insurance policy from Defendant-Appellee Reliance Standard Life Insurance Company. About six months later, nine days after Bradshaw gave birth to her daughter, tragically, Bradshaw suffered a debilitating stroke. So Bradshaw filed a claim for long-term disability benefits with Reliance, which Reliance denied. It denied the claim because of Bradshaw's healthy pregnancy at the time she purchased her policy; Reliance asserted that qualified as a pre-existing condition that "contributed to" Bradshaw's stroke.

Bradshaw brought suit alleging violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Reliance moved for summary judgment, and the district court granted its motion, concluding that Reliance's decision denying benefits was reasonable.

But our review of Reliance's decision reveals that Reliance applied the wrong standard in construing the language of its pre-existing-condition exclusionary provision. And when we apply the correct standard, we must conclude that Reliance's determination was unreasonable. So we reverse and remand the case to the district court for an award of ERISA benefits.

2

## I.

## A.

Bradshaw worked for Pyramid Healthcare Solutions, Inc., as a medical biller. As part of Bradshaw's employment benefits, Pyramid offered her both short-term and long-term disability coverage through a policy administered by Reliance (the "Policy"). Under the terms of the Policy, Bradshaw's disability coverage became effective on May 1, 2013.

At the time she was hired, Bradshaw was a few weeks pregnant. For the next seven months, Bradshaw's pregnancy proceeded without incident.

On November 4, 2013, however, Bradshaw went to the hospital complaining of a headache, elevated blood pressure, and swelling of her hands and feet. Doctors diagnosed her with "mild preeclampsia" and placed her on bedrest.

Two days later, when Bradshaw was 38 weeks and 2 days pregnant, she returned to the hospital to undergo childbirth induction because of "mild preeclampsia." On November 8, 2013, Bradshaw gave birth to a healthy baby girl. No complications were present during the birth, and Bradshaw was released from the hospital on November 10, 2013, with stable blood pressure.

A week after her discharge, on November 17, 2013, Bradshaw returned to the hospital, complaining of a headache, dizziness, and nausea. Bradshaw

underwent an MRI, and it revealed a "massive left cerebellar infarct," more commonly known as a stroke.

Dr. Harold Colbassani, Jr., performed surgery to address the stroke. Bradshaw had a craniectomy,[1] partial resection of her cerebellar hemisphere, and the placement of ventriculostomy.[2] She remained at the hospital until December 1, 2013, at which time she was released. The hospital's discharge summary reveals that doctors diagnosed Bradshaw as having suffered a "[c]erebrovascular accident," "[l]eft vertebral artery dissection," and "[h]ypertension." The summary identified "[h]ypertension" as "contributory to [Bradshaw's] stroke," and it noted "[t]here was likely some residual deficit from her preeclamptic childbirth."

Bradshaw suffered deficits following the surgery. So she submitted a claim for long-term disability benefits with Reliance. She asserted an inability to work as a result of pain, confusion, anxiety, dizziness, forgetfulness, and coordination problems caused by the stroke she suffered on November 17, 2013. Attached to her claim form was paperwork that neurologist Ajay Arora completed on February 20, 2014. Dr. Arora confirmed that Bradshaw had suffered a cerebellar stroke with

---

[1] In a craniectomy, part of the skull is removed to relieve pressure on the brain. https://www.urmc.rochester.edu/neurosurgery/for-patients/treatments/craniectomy.aspx (last visited Aug. 17, 2017).

[2] In a ventriculostomy, a small catheter is placed into the brain, allowing medical professionals to drain fluid from the brain in carefully controlled amounts. Steven Senne RN, BSN, *Head Drains: A Guide to Ventriculostomy Therapy for Patients and Families in the Neurosurgery Intensive Care Unit* (Dep't of Neurosurgery, University of Michigan Health System), at 5 (2012), http://www.med.umich.edu/1libr/neurosurgery/HeadDrains.pdf.

symptoms first appearing on November 17, 2013.[3] He further opined that, because

of problems with balance, coordination, and dizziness, Bradshaw was unable to

return to work.

## B.

Since Bradshaw filed an application for disability benefits within the first

twelve months of her employment, Reliance conducted an investigation to

determine whether Bradshaw's disability was subject to the terms of a pre-existing-

condition exclusion contained in the Policy. The exclusion in the Policy provides,

> **PRE-EXISTING CONDITIONS:** Benefits will not be
> paid for a Total Disability:
>
> (1) caused by;
> (2) contributed to by; or
> (3) resulting from
>
> a Pre-existing Condition unless the Insured has been
> Actively at Work for one (1) full day following the end
> of twelve (12) consecutive months from the date he/she
> became an Insured.

According to the Policy,

> "Pre-Existing Condition" means any Sickness or Injury
> for which the Insured received medical Treatment,
> consultation, care or services, including diagnostic
> procedures, or took prescribed drugs or medicines, during
> the three (3) months immediately prior to the Insured's
> effective date of insurance.

---

[3] Dr. Arora's notes list November 18 as the date of the first known symptoms, but this
appears to be a scrivener's error.

The Policy, in turn, notes that the term "Sickness" "includes pregnancy . . . ."

The three months before Bradshaw's effective date of insurance ran from February 1, 2013, through May 1, 2013. This period (and only this period)—better known as the "look-back period"—is the timeframe Reliance was allowed to consider when it evaluated whether Bradshaw suffered from a "pre-existing condition."

On June 2, 2014, Reliance denied Bradshaw's claim because it concluded that Bradshaw's disability from the stroke resulted from a "pre-existing condition" for which she received treatment during the "look-back period"—namely, pregnancy. The denial letter stated,

> Our investigation has revealed that you received medical treatment, consultation, care or services, or took prescribed drugs or medicines for pregnancy during the period from February 1, 2013 to May 1, 2013. Accordingly, your initial Sickness or Injury is considered to be Pre-existing and your claim for [long-term disability] benefits must be denied. We sincerely regret that our decision could not be more favorable.

Despite Reliance's rejection of Bradshaw's claim on the basis that her stroke-related injuries were "caused by, contributed to by, or resulted from" her prior pregnancy, the denial letter explicitly noted the progression of a "normal pregnancy through November 4, 2013"—that is, more than six months after the look-back period ended.

On November 26, 2014, Bradshaw (who had by now retained counsel) appealed Reliance's denial of her claim, within Reliance's appeal process. In the appeal, Bradshaw emphasized that she had no problems with high blood pressure, headaches, or stroke during the relevant "look-back period." She contended that Reliance's decision to deny long-term disability benefits was wrong for many reasons, including her belief that Reliance had improperly applied the pre-existing-condition exclusion clause in her Policy. Bradshaw argued that Reliance failed to evaluate whether Bradshaw had any symptoms or manifestations of high blood pressure, headaches, preeclampsia, or stroke for which she received treatment during the "look-back period."

In response to the appeal, Reliance asked Dr. Jason Pollock, a board-certified doctor of obstetrics and gynecology, to perform an independent medical review of Bradshaw's records. After doing so, Dr. Pollock agreed that "no clinical evidence suggest[ed] a neurovascular or hypertensive disorder" or preeclampsia during the relevant "look-back period." Nevertheless, Dr. Pollock concluded that Bradshaw's pregnancy and stroke were at least related because "[p]regnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused her neurovascular accident. . . ." Significantly, however, Dr. Pollock noted that "preeclampsia was in no way present nor could it have been effectively predicted" during the "look-back period."

7

Reliance denied Bradshaw's appeal, once again relying on the pre-existing-condition exception in the Policy.   While the denial letter acknowledged that Bradshaw did not have preeclampsia, high blood pressure, or any symptoms of stroke during the "look-back period," it noted that she received treatment for pregnancy during this period.  And because "preeclampsia is a condition related to pregnancy," and preeclampsia contributed to Bradshaw's stroke, Reliance concluded, Bradshaw's stroke-related disability was not covered:

> The medical documentation supports that the conditions for which [Bradshaw] is alleging impairment were caused by or as a result of pregnancy.  As the alleged impairing conditions were caused by or resulted from [Bradshaw's] pregnancy, the claimed impairment is excluded from coverage and no benefits are payable.[4]

## C.

On April 22, 2015, Bradshaw filed a two-count complaint in which she alleged that Reliance violated § 1132(a)(1)(B) of ERISA when it denied her long-term disability benefits.  She based both claims on Reliance's alleged improper denial of benefits under the pre-existing-condition exclusion.  Reliance filed a motion for summary judgment.

---

[4] Curiously, however, the denial letter noted that "[t]he condition for which your client was indicating that she was unable to work *was pregnancy and preeclampsia.*"  (Emphasis added).  This is incorrect since Bradshaw applied for long-term disability benefits based on only the fact that she suffered a stroke.

A magistrate issued a report and recommendation ("R&R") recommending that Reliance's motion for summary judgment be granted. The magistrate judge applied *de novo* review and concluded that Reliance's denial of benefits under the pre-existing-condition exclusion was not wrong and, even if it were, it was not unreasonable. Significantly, however, the R&R did not include a warning that failure to file written objections within fourteen days would waive objections. When neither party filed written objections, the district court adopted the magistrate judge's R&R and entered judgment in favor of Reliance.

Bradshaw filed a Motion for Reconsideration of the Judgment pursuant to Rule 59(e), Fed. R. Civ. P., and simultaneously filed a Notice of Appeal of the Final Judgment with this Court. The district court denied the Motion for Reconsideration.

## II.

ERISA allows a person who is denied benefits under an employee benefit plan to challenge that denial in federal court. *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). The ERISA statute itself does not provide a standard for courts reviewing the benefits decisions of plan administrators. We have established and use a six-step test to evaluate a plan administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong"

9

(*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong*," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (per curiam (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

We review *de novo* a district court's grant of summary judgment affirming a plan administrator's ERISA benefits decision, applying the same legal standards as the district court. *Blankenship*, 644 F.3d at 1354. Our review of an ERISA benefits decision is "limited to consideration of the material available to the

administrator at the time it made its decision." *Id.* (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)).    Whether an administrator's decision is either *de novo* correct or reasonable is a question of law. *Id.*

## III.

### A.

Before turning to the merits of the appeal, we first address Reliance's contention that Bradshaw waived the arguments she raises on appeal because she failed to present them to the district court.  In particular, Reliance complains that Bradshaw cites to cases in her initial brief that she did not cite in responding to the motion for summary judgment.

Of course, it is well settled by now that we generally will not consider a legal issue unless it was presented to the trial court.  *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) (citations omitted).  But here, Bradshaw did not waive her arguments on appeal because she fairly presented them to the district court.[5]

---

[5] Bradshaw did not file objections to the magistrate judge's R&R.  Eleventh Circuit Rule 3-1 provides, in relevant part, "A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions *if the party was informed of the time period for objecting and the consequences on appeal for failing to object.*"  11th Cir. R. 3-1 (emphasis added); *see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (per curiam).  Here, however, the magistrate judge's R&R did not include any

Bradshaw's overarching argument on appeal is that Reliance incorrectly and unreasonably interpreted the Policy by applying the pre-existing-condition exception to deny long-term disability benefits. In Bradshaw's view, the exception does not apply because she did not receive treatment for a stroke during the "look-back period." She also urges us to find Reliance's interpretation of the Policy to be unreasonable based on its attenuated definition of causation. Bradshaw fairly presented both of these arguments in the district court.

First, when Bradshaw opposed Reliance's motion for summary judgment, she asserted that Reliance's decision was *de novo* wrong, clearly arguing that Reliance had misapplied the pre-existing-condition exception. Bradshaw disputed that her pregnancy was related to her stroke and argued in the alternative that Reliance used a "leap of logic [and] stacked inferences in concluding that the preeclampsia was the cause of the stroke, and failed to consider any other intervening cause." She also contended that Reliance's decision was not reasonable because it ignored that Bradshaw had no symptoms of and received no treatment for stroke during the "look-back period."[6]

---

provision warning the parties that they had fourteen days to file written objections to the findings in the R&R or that failure to do so would waive objections. As a result, Bradshaw's failure to assert objections to the R&R does not deprive her of the ability to raise her arguments on appeal.

[6] In her supplemental filing in opposition to the motion for summary judgment, Bradshaw similarly argued that Reliance predicated its denial of long-term disability benefits on an improper application of the pre-existing-condition exclusion clause in the policy. Again, Bradshaw claimed Reliance improperly stacked, without support, inferences that Bradshaw's

While the manner in which Bradshaw presents her arguments on appeal is not precisely the same as it was at the district court level, it need not be. A party may take a "new approach" to an issue preserved for appeal; she may improve how she articulated the same arguments when she was before the district court, and a good attorney often does. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992) (citations omitted). While new claims or issues may not be raised for the first time on appeal, new arguments relating to preserved claims may. *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008) (citing *Yee*, 503 U.S. at 534).

Nor do *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) and *Singh v. U.S. Attorney General*, 561 F.3d 1275, 1278 (11th Cir. 2009) (per curiam), change the analysis, as Reliance suggests. *Hamilton* and *Singh* relate to a party's failure to cite case law in an opening brief on appeal, so they are inapplicable here. *See Hamilton*, 680 F.3d at 1319; and *Singh*, 561 F. 3d

---

pregnancy caused or contributed to the disabling condition of preeclampsia and that preeclampsia or Bradshaw's pregnancy (or both) caused her stroke. Bradshaw also alleged that Reliance failed to evaluate whether she had symptoms of high blood pressure, headaches, or stroke for which she received treatment during the "look-back period."

at 1278. A party is entitled to rely on new cases as long as the issues on appeal were preserved. Here, they were.[7]

## B.

We now turn our attention to the merits of this appeal—whether Reliance reasonably interpreted the Policy when it denied Bradshaw long-term disability benefits under the Policy's pre-existing-condition exclusion.

Both parties agree that the plan gives Reliance discretion to interpret the Policy. Reliance also appears to be responsible for paying claims, and it had authority to determine eligibility under the plan. This means that Reliance acted under an apparent conflict of interest. Under these circumstances, we apply the arbitrary-and-capricious standard, taking Reliance's conflict of interest into consideration. Under this standard of review, our role "is limited to determining whether [the administrator's] interpretation was made rationally and in good faith—not whether it was right." *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.), *cert. denied*, 474 U.S. 995 (1985) (citations omitted).

In the context of ERISA cases, the arbitrary-and-capricious standard is interchangeable with the abuse-of-discretion standard. *Blankenship*, 644 F.3d at

---

[7] Even if Bradshaw had failed to properly preserve the issues she raises on appeal, we could still exercise our discretion to consider them because they involve a pure question of law. Where an appeal involves a pure question of law, we may consider that question if we determine that a refusal to do so could result in a miscarriage of justice, that "the proper resolution is beyond any doubt," or that the issue involves "significant questions of general impact or of great public concern." *Ramirez*, 686 F.3d at 1250 (citation and quotation marks omitted). Here, at least one of these circumstances applies.

1355 n.5 (citation omitted). Nevertheless, a ruling based on an erroneous view of the law necessarily is arbitrary and capricious. *Cf. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .").

A plaintiff suing under ERISA to recover benefits bears the burden of proving her entitlement to those benefits. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citation omitted); *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (per curiam) (citation omitted). Nevertheless, where an insurer contends that an exclusion contained in the policy applies to deny benefits, the burden generally falls on the insurer to prove the exclusion prevents coverage. *Horton*, 141 F.3d at 1040 (citation omitted).

Here, it is undisputed that Bradshaw became "[t]otally [d]isabled," as defined in the Policy, as a result of her stroke. So the sole issue for our consideration concerns whether Reliance was reasonable in its interpretation and application of the pre-existing-condition exclusion.

We have instructed that "[w]hen ERISA governs, federal substantive law developed in this area of contract law controls." *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1333 (11th Cir. 1995). ERISA is silent on matters of contract

interpretation or construction. *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179, 1183 (11th Cir. 2004). But we are not left without guidance since "[c]ourts have the authority to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." *Horton*, 141 F.3d at 1041 (internal quotation marks and citation omitted). When creating this "body of common law, federal courts may look to state law as a model because of the states' greater experience in interpreting insurance contracts and resolving coverage disputes." *Id.*

In order to decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals. *Id.* (citation omitted). ERISA's two central goals include (1) protection of the interests of employees and their beneficiaries in employee benefit plans and (2) uniformity in the administration of employee benefit plans. *Id.*(citation omitted); *see also Dixon*, 389 F.3d at 1184.

With these guidelines in mind, we turn to Florida law. Under Florida law, we must construe insurance contracts "in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). When interpreting insurance contracts, "the language of the policy is the most important factor." *Taurus Holdings, Inc. v. U. S. Fid. and Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005). The plain meaning of the provision and how an ordinary person would read the provision govern. *See Union Am. Ins.*

16

*Co. v. Maynard*, 752 So. 2d 1266, 1268 (Fla. 4th Dist. Ct. App. 2000). The insurer must make clear what is excluded from coverage. *Id.* (citation omitted). And under ERISA, clauses that exclude coverage are interpreted narrowly. *See Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1011 (10th Cir. 2004) (per curiam) (citing 29 C.F.R. § 2590.701-3(a)(1)(i)(C)), *abrogated in part on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

Here, the Policy permits Reliance to deny long-term disability benefits for a total disability that was "caused by," "contributed to by," or "resulting from"[8] a pre-existing condition unless the insured has been actively at work for a full year. Reliance claims that it reasonably applied the exclusion because Bradshaw had not been employed for a full year, was pregnant during the "look-back period," and her pregnancy "played a part in producing" the stroke. More specifically, Reliance justifies its denial of Bradshaw's claim since it views her pregnancy as having "contributed to" her stroke.

We disagree and find Reliance's interpretation of the pre-existing-condition clause and, in particular, the phrase "contributed to," to be both unreasonable as a matter of law and at odds with the goals of ERISA.

---

[8] The terms "caused by," "contributed to by," or "resulting from" are not defined in the Policy.

Our reasoning in *Dixon* leads naturally to this conclusion. In *Dixon*, Horace Dixon had an accidental-death policy. *Dixon*, 389 F.3d at 1180. His policy provided benefits for bodily injuries "caused by an accident which happens while an insured is covered by the policy" and "which, *directly and from no other causes*, resulted in a covered loss." *Id.* (emphasis added).

Unfortunately, Mr. Dixon died in a single-car accident, though the cause of his death was heart failure—a fact the parties did not dispute. *Id.* at 1181. Annie Dixon, the beneficiary of the policy, claimed that her husband's heart attack, and therefore his death, was caused by a car accident, entitling her to coverage under an accidental-death provision of the insurance policy. *Id.* at 1180.

We considered whether, and to what extent, language in an ERISA policy requiring loss "directly and from no other causes" precluded recovery for accidental injury where some pre-existing condition was a "contributing factor" to the loss. *Id.* at 1183. After reviewing other circuits' approaches to an inquiry of this nature, we noted our agreement with the reasoning of the Fourth Circuit in *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir. 1990). The Fourth Circuit explained—and we agreed—that "adopt[ing] a strict and unambiguous interpretation of 'directly and independent of all other causes' would yield untenable results." *Dixon*, 389 F.3d at 1184. We approvingly noted the Fourth Circuit's reasoning: "[T]o recover under such policies as the one here

18

involved, and with such a stringent construction, a claimant would have to be in perfect health at the time of his most recent injury before the policy would benefit him, and that, of course, is a condition hardly obtained, however devoutly to be wished." *Id.* (quoting *Adkins*, 917 F.2d at 796) (quotation marks omitted).

Based on *Adkins*'s analysis, we then adopted a "substantially contributed" test. Under this test, the language "directly and from no other causes" precludes recovery for otherwise covered events only where another condition "substantially contributed" to the loss. *Id.* So the mere fact that another factor contributed to the loss in some way is not enough to trigger the exclusionary clause. As we explained, "The 'substantially contributed' test gives this exclusionary language reasonable content without unreasonably limiting coverage. And, it advances ERISA's purpose to promote the interests of employees and their beneficiaries." *Id.*

The exclusion in the Policy at issue here suffers from the same problem as that at issue in *Dixon*. Just as the language of the *Dixon* policy—"directly and from no other causes"—strictly construed, required the ruling out entirely of any health conditions that in some way might have contributed to the loss, the language of the Policy here—excluding coverage if the loss is "(1) caused by; (2) contributed to by; or (3) resulting from a Pre-existing Condition"—strictly construed purports to preclude coverage if any pre-existing health conditions in

19

some way—no matter how remote—might have contributed to the loss. So like the Fourth Circuit noted about the policy language at issue there, and as we agreed in *Dixon*, the Policy language at issue here would essentially require a claimant "to be in perfect health at the time of [obtaining the policy] before the policy would benefit him [during the succeeding twelve months], and that, of course, is a condition hardly obtained, however devoutly to be wished." *Dixon*, 389 F.3d at 1184 (quoting *Adkins*, 917 F.2d at 796).

To avoid a construction of the Policy that renders it essentially meaningless for the first twelve months of its existence, consistent with our reasoning in *Dixon*, we must construe the language "caused by; contributed to by; or resulting from a Pre-existing Condition" to exclude coverage for only those losses *substantially* caused by, *substantially* contributed to by, or *substantially* resulting from a pre-existing condition. This interpretation of the Policy language not only comports with our precedent but it also advances ERISA's clear purpose to provide greater coverage to beneficiaries.

The Tenth Circuit's decision in *Fought*, likewise supports our conclusion. In *Fought*, the Tenth Circuit analyzed a pre-existing-condition-exclusion clause similar to the one at issue here: it stated that benefits would not be paid to the insured for a disability that was "caused by, contributed to by, or resulting from your . . . pre-existing condition." *Fought*, 379 F.3d at 999.

20

Fought had coronary artery disease. She was admitted to the hospital for unstable angina syndrome, which caused her to undergo an elective coronary artery revascularization surgery requiring a special procedure (based on Fought's anatomy) to close the surgical wound. The wound became infected, requiring additional surgery and ultimately resulting in disability. The insurer asserted that but-for Fought's coronary artery disease, none of the rest of the chain of events resulting in total disability would have happened. *Id.* at 1009-1012.

The Tenth Circuit rejected the insurance carrier's but-for theory of causation because accepting the insurer's reasoning would "effectively render meaningless the notion of the pre-existing condition clause by distending the breadth of the exclusion." *Id.* at 1010. As the court observed, "there were at least five intervening stages between the pre-existing coronary artery disease and the disability." *Id.* This caused the Tenth Circuit to note that "[t]he exclusion cannot merely require that the pre-existing condition be *one in a series of factors* that contributes to the disabling condition; the disabling condition must be *substantially or directly attributable* to the pre-existing condition." *Id.* (emphasis added) (citation omitted).

Here, Reliance attempts to make a similar "but-for" argument: it asserts that but for Bradshaw's pregnancy, she would not have developed high blood pressure; and but for her high blood pressure, she would not have developed preeclampsia;

21

and but for her preeclampsia, she would not have suffered a stroke; and finally, but for her stroke, Bradshaw would not have become totally disabled. Like in *Fought*, multiple stages intervened between Bradshaw's healthy pregnancy and her total disability. We reject Reliance's position for the same reasons the Tenth Circuit found Fought's insurer's argument unconvincing and because such a broad construction of the exclusion runs directly counter to ERISA's central goal of protecting the interests of employees and their beneficiaries in employee benefit plans. *See Dixon*, 389 F.3d at 1184–85.

The record makes clear that the only condition Bradshaw had during the "look-back period" was a healthy pregnancy. On this record, Bradshaw's pregnancy cannot be said to have *substantially* contributed to her total disability.

Bradshaw's pregnancy was progressing well, with no sign of difficulty or complication at all during the "look-back period." She had no symptoms of stroke, did not suffer from high blood pressure, and did not have preeclampsia. During the relevant period, even Bradshaw's doctors did not suspect that she would develop high blood pressure, then experience preeclampsia, and then suffer a stroke. Indeed, during the look-back period, the chances of stroke were so remote, they were not even a consideration based on Bradshaw's healthy pregnancy. Pregnancy is neither a necessary precursor to stroke nor does pregnancy normally develop or progress into stroke. To be sure, preeclampsia is a complication that

can occur during pregnancy, but stroke is not a condition typically associated with a healthy pregnancy, like Bradshaw had at the time of the look-back period.[9]

Connecting Bradshaw's healthy pregnancy during the look-back period to her ultimate disabling condition requires four links. On this record, that's too many. To view Bradshaw's healthy pregnancy as a substantially contributing factor to her disability simply requires too much attenuation. *See, e.g., Fought*, 379 F.3d at 1010 (finding five intervening stages between disease and disability to be too attenuated). And because it cannot fairly be said that Bradshaw's healthy pregnancy *substantially* contributed to her disability, Reliance's use of the pre-existing condition exclusion to deny Bradshaw benefits was unreasonable.

Nor does Reliance's reliance on Dr. Pollock's report affect the analysis. First, Dr. Pollock never opined that pregnancy qualified as a pre-existing condition or that it contributed to Bradshaw's total disability. To the contrary, Dr. Pollock's remarks, when read as a whole, appear to reveal his belief that Bradshaw's healthy pregnancy was *not* a pre-existing condition that substantially contributed to Bradshaw's disability and that the exclusion should not apply.

---

[9]Well fewer than 1% of pregnant women suffer from stroke. *See* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3137888/ (last visited August 17, 2017) According to the American Stroke Association, approximately three-hundredths of a percent of pregnant women in the United States suffered strokes in 2016.
*See* www.strokeassociation.org/idc/groups/stroke-public/@wcm/@hcm (last visited August 17, 2017).

Significantly, in response to a question asking whether Bradshaw received consultation, care, or services "for a condition that caused, contributed to, or resulted in the alleged impairment," Dr. Pollock stated,

> The consultation for pregnancy was underway during this time frame *but at this point there was no clinical evidence suggesting a neurovascular or hypertensive disorder.* Although pregnancy is required for preeclampsia to develop, and certainly preeclampsia contributed to if not caused [Bradshaw's] neurovascular accident that resulted in long-term impairment, *preeclampsia was in no way present nor could it have been effectively predicted* during the [look-back period].

(Emphasis added). At best, Dr. Pollock's report opines that *preeclampsia* contributed to Bradshaw's total disability. But it concedes that preeclampsia was not present during the "look-back period," and preeclampsia does not typically occur during pregnancy.[10] For these reasons, Dr. Pollock's remarks do not support a finding that Bradshaw had a pre-existing condition during the "look-back period" that substantially contributed to her total disability.

## IV.

We conclude that the district court erred when it granted summary judgment in favor of Reliance. Reliance's decision to deny Bradshaw's claim was unreasonable, based on a correct construction of the Policy's pre-existing-

---

[10] Between 96% and 97% of pregnant women in the United States proceed to delivery without developing preeclampsia.

*See* https://www.uptodate.com/contents/preeclampsia-beyond-the-basics (last visited August 31, 2017).

condition exclusion.  We therefore reverse and remand the case to the district court for an award of ERISA benefits.

**REVERSED AND REMANDED.**